IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

MARCIA L. WOHLHUETER,

               Plaintiff,

    v.

CAMBRIA FABSHOP-ATLANTA,
INC.,

            Defendant.

CIVIL ACTION FILE NO.

1:04-CV-2922-JFK

## ORDER AND WRITTEN OPINION

Plaintiff Marcia L. Wohlhueter filed her complaint in this case against Defendant Cambria Fabshop-Atlanta, Inc. ("Cambria"), on August 23, 2004. [Doc. 2]. Plaintiff Wohlhueter alleges that Defendant Cambria discriminated against her on the basis of her sex in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"). [Doc. 2]. Plaintiff contends that Defendant failed to promote her and terminated her employment because she is a woman. [Id.]. Pursuant to Rule 56(b) of the Federal Rules of Civil Procedure, Defendant Cambria has filed a motion for summary judgment [Doc. 49] on Plaintiff's claims.

The Local Rules for the Northern District of Georgia require the court to accept as admitted those facts in Defendant's statement of material facts that Plaintiff has not "specifically controverted" with citation to relevant portions of the record. L.R.

56.1B(2), (3).  Plaintiff has not filed any response to Defendant Cambria's statement of material facts.  [Doc. 49].  Accordingly, the facts as expressed in Defendant's statement "shall be deemed to have been admitted."  L.R. 56.1B(2), (3).

I.    **Facts**

When evaluating the merits of a motion for summary judgment, the court must view the evidence and factual inferences in a light most favorable to the non-moving party.  See Rollins v. TechSouth, Inc., 833 F.2d 1525, 1528 (11th Cir. 1987).  However, unsupported self-serving statements by the party opposing summary judgment are insufficient to avoid summary judgment.  See Midwestern Waffles, Inc. v. Waffle House, Inc., 734 F.2d 705, 714 (11th Cir. 1984).  Therefore, the evidence presented by the parties having been evaluated in accordance with the foregoing principles, the following facts are deemed to be true for the limited purpose of evaluating Defendant Cambria's motion [Doc. 49] for summary judgment.

Defendant Cambria produces and sells fine quartz countertops.  [Young Declaration ("Dec.") ¶ 3].  To meet growing demand, Cambria decided in June 2003 to add a second production shift.  [Defendant's Statement of Material Facts ("DSMF") ¶ 1].  The company specifically sought to fill four (4) positions: a CNC Operator, a Saw Operator, and two (2) Quality Control ("QC") Inspectors.  [Id.].  By mid-June

2

2003, Defendant Cambria had filled the Saw Operator, CNC Operator and one of the two (2) QC Inspector positions, such that only the second QC Inspector position remained vacant.  [DSMF ¶ 2].

On June 30, 2003, Jim Young, Cambria's Plant Manager, interviewed Plaintiff Marcia Wohlhueter for employment.  [DSMF ¶ 3].  In the course of the interview, Young showed Plaintiff the entire line of operations from start to finish and inquired into her prior work experience in CNC and quality control.  [Id.].  Young made the decision to offer Plaintiff Wohlhueter the vacant QC Inspector position during the interview, and Plaintiff accepted the offer.  [DSMF ¶¶ 4, 6].  Plaintiff was aware that this QC Inspector position was the only vacant position with Cambria.  [DSMF ¶ 5].  Plaintiff began working for Cambria as a QC Inspector on July 1, 2003, the day after her interview with Young.  [DSMF ¶ 6].

At the time Plaintiff Wohlhueter commenced her employment, Cambria's operations consisted of approximately twelve (12) administrative/office employees, eight (8) employees in quality control, and fourteen (14) employees in production.  [DSMF ¶ 7].  Already on second shift when Plaintiff began were Neil Cigelske, the second shift Supervisor who also operated the CNC; Willie Bell, CNC Operator; Patrick Walker, shipping and receiving; Willie Nelson, Saw Operator; and Dan Childs,

3

QC Inspector.  [DSMF ¶ 8].  Approximately one month after Plaintiff's hire, Defendant Cambria had two (2) first shift CNC vacancies, which it filled by promotion from within.  [DSMF ¶ 9].  These positions were filled by employees on the first shift operations.  First shift employees received preference as to vacancies on that shift.  [DSMF ¶ 10].  Around this time, Cambria also had a new CNC vacancy on second shift, which was filled by promoting Patrick Walker.  [DSMF ¶ 11].  Plaintiff Wohlhueter was told that these CNC positions were filled based on seniority, and each of the selected employees had greater seniority than Plaintiff.  [DSMF ¶ 12].  Plaintiff concedes the filling of these vacancies based on seniority was legitimate.  [DSMF ¶ 13].

        For most of her tenure with Defendant Cambria, Plaintiff's immediate supervisor was the Quality Control Manager, Gene Bromberek.  Because she worked the second shift, after management had left for the day, Plaintiff was also supervised by the second shift Supervisor, Neil Cigelske.  [DSMF ¶ 14].  Plaintiff acknowledges that if Cigelske instructed her to perform a task, she had to follow that instruction.  [DSMF ¶ 15].  However, on several occasions, Plaintiff questioned Cigelske's authority and the tasks he assigned her.  [DSMF ¶ 16].  Young was made aware of Plaintiff's conduct and the fact that Cigelske had discussed the issue with her.  [DSMF ¶ 17].

Young stated in his declaration: "Some time after she commenced employment, Plaintiff asked to be cross-trained on pre-inspection processes in Cambria's Quality department. Plaintiff also requested training on polishing, a position within Cambria's Production department." [Young Dec. ¶ 8]. Young and Bromberek approved both of Plaintiff's requests. [Id.]. Bromberek left Defendant Cambria in mid-October of 2003. [DSMF ¶ 19]. At that time, Young promoted Karen Battles to QC Manager, and Battles became Plaintiff's immediate supervisor. [Id.].

In or about late October of 2003, Defendant Cambria decided to add an additional CNC position to its second shift operations. [DSMF ¶ 20]. Young proposed Plaintiff and current male employees to his management team for consideration for this CNC position. But based on input from his managers, he ultimately decided to seek external candidates. [DSMF ¶ 21]. On October 28, 2003, Young hired Ben Ready for the newly created CNC position because of his vocational training and strong technical background.[1] [DSMF ¶ 22].

On the evening of October 28, 2003, Young asked Plaintiff if she was alright. [DSMF ¶ 27]. Plaintiff said she was not and, not knowing Ready's name, asked

_____

[1] If Cambria had filled this CNC position based on seniority, Plaintiff would not have been selected because numerous Cambria employees, including Dan Childs, had greater seniority than Plaintiff. [DSMF ¶ 23].

5

Young why he had hired that guy on the CNC.  Young apologized for not talking to her about it but stated that he had decided to do something different.  [DSMF ¶ 27].  Plaintiff said that was fine.  [Id.].  Plaintiff did not address the matter any further with Young, and she did not complain to anyone else in management.  [DSMF ¶ 28].

A few hours after commencing work on the following day, October 29, 2003, Battles instructed Plaintiff to polish or train in polishing.  [DSMF ¶ 29].  Battles gave this instruction three (3) times.  Instead of following Battles' repeated instruction, Plaintiff kept asking her what was going on.  [Id.; Plaintiff's Deposition ("Pla. Dep.") at 189-90].  Battles asked Plaintiff if they needed to go to an office to discuss the matter, and Plaintiff said that they did not.  [Id.].  A human resources administrative assistant, Greg Grantham, was sent to bring Plaintiff to the office to speak with Battles. [DSMF ¶ 32].  In the office, Plaintiff told Battles that she did not get the CNC position that she wanted in production, but now Battles was telling her to go to the production area.  [DSMF ¶ 33; Pla. Dep. at 190-91].  Plaintiff also told Battles that she had spoken with her prior supervisor, Bromberek, about the fact that she was not able to keep up with polishing and everything else.  [DSMF ¶ 33].

Battles reported this incident to Plant Manager Young, explaining that she had asked Plaintiff to perform hand polishing duties due to an outstanding order that had

to be shipped the next day.  [DSMF ¶ 34].  Battles further reported that Plaintiff repeatedly refused to do as Battles had instructed, was insubordinate and argumentative.  [DSMF ¶ 35].  Battles also informed Young that Plaintiff had ignored her repeated instruction to come to the office to discuss the matter and that she had to send Grantham to get Plaintiff.  [DSMF ¶ 36].  Finally, Battles stated that Plaintiff continued her argumentative and insubordinate behavior.  [Id.].

Young made the decision to send Plaintiff home pending his investigation of the matter.  [DSMF ¶ 37].  As part of his investigation, Young spoke to numerous employees besides Battles, including Grantham, Neil Cigelske, Production Manager John Pierman and Dan Childs.  [DSMF ¶ 38].  These individuals confirmed the account of the incident as related by Battles.  [DSMF ¶ 39].  Based on his investigation, Young determined that Plaintiff's repeated refusal to comply with her manager's instructions constituted insubordination.  [DSMF ¶ 40].  Young then made the decision to terminate Plaintiff's employment.  [Id.].  Plaintiff was terminated on October 30, 2003, approximately four (4) months after she was hired.  [DSMF ¶ 41].  Plaintiff is aware that Cambria's policies state that insubordination is prohibited and grounds for termination, and she knows of no other Cambria employee who has refused to comply

with a supervisor's instructions.  [DSMF ¶¶ 46, 47].   After Plaintiff's termination, the decision was made not to fill her Quality Control position.  [DSMF ¶ 42].

On November 3, 2003, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").  [DSMF ¶ 43; Doc. 2].   In her charge, Plaintiff alleged that Defendant Cambria discriminated against her on the basis of her sex and retaliated against her. [Doc. 2].  Plaintiff filed her complaint in this case on August 23, 2004.  [Id.].

Additional facts will be set forth below as they become necessary for discussion of Plaintiff's claims.

## II.   Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986).

The standard for granting summary judgment mirrors the directed verdict standard under Rule 50(a), which requires the court to grant a directed verdict where there can be but one reasonable conclusion.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986).

The movant bears the initial burden of asserting the basis of its motion, and that burden is a light one.  See Celotex, 477 U.S. at 323, 106 S. Ct. at 2553.  The movant is not required to negate its opponent's claim.  See id.  Rather, the movant may discharge this burden merely by "'showing' -- that is, pointing out to the district court -- that there is an absence of evidence to support the non-moving party's case."  Id. at 325, 106 S. Ct. at 2554.  When this burden is met, the non-moving party is then required to "go beyond the pleadings and . . . designate 'specific facts showing that there is a genuine issue for trial.'"  Id. at 324, 106 S. Ct. at 2553 (quoting Fed. R. Civ. P. 56(e)).

While the evidence and factual inferences are to be viewed in a light most favorable to the non-moving party, see Rollins, 833 F.2d at 1529; Everett v. Napper, 833 F.2d 1507, 1510 (11th Cir. 1987), that party "must do more than simply show that there is some metaphysical doubt as to the material facts," Matsushita Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L.

Ed. 2d 538 (1986).  The non-moving party must come forward with specific facts showing there is a genuine issue for trial.  See id. at 587.  An issue is not genuine if it is created by evidence that is "merely colorable" or is "not significantly probative." Anderson, 477 U.S. at 249-50, 106 S. Ct. at 2511.  Accord Young v. General Foods Corp., 840 F.2d 825, 828 (11th Cir. 1988).  Similarly, substantive law will identify which facts are material.  See Anderson, 477 U.S. at 248, 106 S. Ct. at 2510.  Thus, to survive a motion for summary judgment, the non-moving party must come forward with specific evidence of every element essential to its case, so as to create a genuine issue for trial.  See Celotex, 477 U.S. at 323, 106 S. Ct. at 2553; Rollins, 833 F.2d at 1528.

## III.   Discussion

Plaintiff Wohlheuter alleges that Defendant Cambria violated Title VII by discriminating against her on the basis of her sex.  [Doc. 2].  Plaintiff contends that Defendant failed to promote her and terminated her employment because she is a woman.  [Id.].  Although Plaintiff did not assert a retaliation claim in her complaint, she alleged retaliation in her EEOC charge, which was filed as an attachment to the complaint.  [Doc. 2].  In the charge, Plaintiff alleged that her termination was in retaliation for a prior complaint of discrimination.  [Id.].  Defendant has addressed the

10

retaliation issue in its summary judgment motion, and the undersigned will do so as well. [Doc. 49].

### A.   Failure to Promote Claim

According to Plaintiff Wohlhueter, Defendant Cambria refused to promote her to the position of CNC Operator on the basis of her sex.  Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1). In a disparate treatment action, the plaintiff carries the burden of demonstrating that the defendant has unlawfully discriminated against her.  <u>See</u> <u>Texas Dep't of Community Affairs v. Burdine</u>, 450 U.S. 248, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981).  The familiar <u>McDonnell Douglas</u> framework governs the allocation of burdens and order of presentation and proof, and they are as follows:  (1) plaintiff has the burden of proving a *prima facie* case of discrimination; (2) if the plaintiff succeeds in proving the *prima facie* case, the burden (of production) shifts to the defendant to articulate some legitimate, non-discriminatory reason for the action taken against the employee; and (3) should the defendant carry this burden, plaintiff must have an opportunity to prove that the legitimate reason offered by defendant was a pretext for discrimination.  <u>See</u>

11

McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04, 93 S. Ct. 1817, 1824-25, 36 L. Ed. 2d 668 (1973).

A plaintiff may establish a *prima facie* case of failure to promote by showing: (1) that she belongs to a protected group; (2) that she sought and was qualified for the position that the employer was attempting to fill; (3) that despite her qualifications she was rejected; and (4) that after her rejection the employer either continued to attempt to fill the position or in fact filled the position with a person outside of the plaintiff's protected group.  See Walker v. Mortham, 158 F.3d 1177 (11th Cir. 1998); Crawford v. Western Electric Co., Inc., 614 F.2d 1300, 1315 (5th Cir. 1980).  Since Perryman v. Johnson Prods. Co., 698 F.2d 1138 (11th Cir. 1983), many Eleventh Circuit opinions have articulated the additional requirement that the plaintiff show that the person who filled the position was equally or less qualified than the plaintiff.  See, e.g., Carter v. Three Springs Residential Treatment, 132 F.3d 635, 642 (11th Cir. 1998); Combs v. Plantation Patterns, 106 F.3d 1519, 1539 n. 11 (11th Cir. 1997); Roberts v. Gadsden Memorial Hosp., 835 F.2d 793, 796 (11th Cir.), modified upon reconsideration, 850 F.2d 1549 (11th Cir. 1988).  However, in Walker, 158 F.3d 1177, the Eleventh Circuit clarified that the plaintiff is not required to prove "relative qualifications" at the *prima facie* stage.  The burden to present evidence of relative qualifications is placed on the

12

employer, not the employee, in the rebuttal stage of the <u>McDonnell Douglas</u> framework. <u>See</u> <u>Walker</u>, 158 F.3d at 1192.

In or about late October of 2003, Defendant Cambria decided to add an additional CNC position to its second shift operations. [DSMF ¶ 20]. Although Jim Young, Cambria's Plant Manager, proposed Plaintiff and current male employees to his management team for consideration for this CNC position, he ultimately decided to seek external candidates. [DSMF ¶ 21]. On October 28, 2003, Young hired Ben Ready for the CNC position. [DSMF ¶ 22]. Plaintiff Wohlhueter is able to establish the first three (3) *prima facie* elements because she is a woman who was denied the CNC Operator position after she informed management that she was interested in it. She can also show the final element because a male was awarded the position.

Because Plaintiff has established a *prima facie* case of discriminatory failure to promote, the burden of production then shifts to Defendant to articulate some legitimate, non-discriminatory reason for not promoting Plaintiff to the CNC Operator position. <u>See</u> <u>Combs</u>, 106 F. 3d 1519, 1528 (11th Cir. 1997) (citing <u>McDonnell Douglas</u>, 411 U.S. at 802, 93 S. Ct. at 1824; <u>Burdine</u>, 450 U.S. at 254, 101 S. Ct. at 1094). "[T]o satisfy this intermediate burden, the employer need only produce admissible evidence which would allow the trier of fact rationally to conclude that the

employment decision had not been motivated by discriminatory animus." Id. (quoting Burdine, 450 U.S. at 257, 101 S. Ct. at 1096). "[T]he defendant need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." Id. (quoting Burdine, 450 U.S. at 254-55, 101 S. Ct. at 1094). The defendant's burden in the rebuttal stage is "exceedingly light." Walker v. NationsBank of Florida, 53 F.3d 1548, 1556 (11th Cir. 1995); Perryman, 698 F.2d at 1142.

Young stated in his declaration that he decided to hire Ben Ready for the CNC Operator position instead of Plaintiff or any of the male employees "based upon his vocational training and strong technical background. . . ." [Young Dec. ¶ 14]. Plaintiff had some metal working CNC experience. Young stated, however, that "because of the differences between stone and metal," metal CNC experience "is neither a qualification for Cambria's CNC positions, nor is it viewed as a positive attribute." [Young Dec. ¶¶ 6, 13]. Young also stated, "It has been the collective experience of Cambria management that the best CNC Operators generally come directly from technical school, with no metalworking experience whatsoever." [Id. ¶ 13]. The court finds that Defendant has clearly satisfied its "exceedingly light" burden of producing

14

a legitimate, non-discriminatory reason for hiring Ready instead of Plaintiff to the CNC Operator position.  <u>Walker</u>, 53 F.3d at 1556.

Once a defendant meets its burden of production, "the presumption of discrimination created by the McDonnell Douglas framework 'drops from the case,' and 'the factual inquiry proceeds to a new level of specificity.'"  <u>Combs</u>, 106 F.3d at 1528 (quoting <u>Burdine</u>, 450 U.S. at 255 & n. 10, 101 S. Ct. at 1094-95 & n. 10).  The plaintiff then "has the opportunity to demonstrate that the defendant's articulated reason for the adverse employment action is a mere pretext for discrimination." <u>Holifield v. Reno</u>, 115 F.3d 1555, 1565 (11th Cir. 1997) (citing <u>McDonnell Douglas</u>, 411 U.S. at 804, 93 S. Ct. at 1825).  Plaintiff's proof of pretext merges with her "ultimate burden of showing that the defendant intentionally discriminated against the plaintiff." <u>Id.</u> (citing <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 511, 113 S. Ct. 2742, 2749, 125 L. Ed. 2d 407 (1993)).  This task is a highly focused one.

The court "must, in view of all the evidence, determine whether the plaintiff has cast sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable fact finder to conclude that the employer's proffered 'legitimate reasons were not what actually motivated its conduct.'"  <u>Combs</u>, 106 F.3d at 1538 (quoting <u>Cooper-Houston v. Southern Ry. Co.</u>, 37 F.3d 603, 605 (11th Cir. 1994)).  The court's

15

task is to "evaluate whether the plaintiff has demonstrated 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could find them unworthy of credence.'" Id. (quoting Sheridan v. E.I. DuPont De Nemours & Co., 100 F.3d 1061, 1072 (3rd Cir. 1996) (en banc), cert. denied, 521 U.S. 1129, 117 S. Ct. 2532, 138 L. Ed. 2d 1031 (1997)).  Plaintiff can either directly persuade the court that a discriminatory reason more likely motivated the employer or show indirectly that the employer's proffered explanation is unworthy of credence.   See Miles v. M.N.C. Corp., 750 F.2d 867, 870-71 n.4 (11th Cir. 1985).

The Eleventh Circuit has held, "[A] plaintiff may not in all cases merely rest on the laurels of her *prima facie* case in the face of powerful justification evidence offered by the defendant."  Grigsby v. Reynolds Metals Co., 821 F.2d 590, 596 (11th Cir. 1987).  In the present case, however, Plaintiff Wohlhueter has apparently sought to do just that.  She has not responded to Defendant Cambria's argument and has not offered any evidence that the company's proffered reason for hiring Ready was a pretext for sex discrimination.   A reasonable fact finder could not conclude that Defendant's legitimate, non-discriminatory reason was "not what actually motivated its conduct." Combs, 106 F.3d at 1538.   Accordingly, the court **ORDERS** that Defendant's

16

summary judgment motion [Doc. 49] be **GRANTED** on Plaintiff's discriminatory

failure to promote claim.

### B.      Termination Claim

Plaintiff Wohlhueter next claims that Defendant Cambria violated Title VII

because it terminated her employment on the basis of her sex and in retaliation for a

prior complaint of discrimination.  With respect to her sex discrimination claim, Plaintiff

may establish a *prima facie* case of discriminatory termination by establishing that: (1)

she is a member of a protected class; (2) she was qualified for the job from which she

was terminated; (3) despite her qualifications, she was terminated; and (4) Plaintiff was

replaced by someone outside her protected class, or her employer treated similarly

situated employees outside her classification more favorably.  See Lathem v. Dep't of

Children and Youth Servs., 172 F.3d 786, 792 (11th Cir. 1999); Jones v. Bessemer

Carraway Med. Ctr., 137 F.3d 1306, 1310 (11th Cir. 1998), partial superseding opinion

on denial of rehearing, 151 F.3d 1321 (11th Cir. 1998); Holifield, 115 F.3d at 1562; Nix

v. WLCY Radio/Rahall Communications, 738 F.2d 1181, 1185 (11th Cir. 1984).

Plaintiff is able to establish the first three (3) *prima facie* elements because she is a

woman who was fired from her Quality Control Inspector job, for which she was at

least minimally qualified.  Because Plaintiff was not replaced after she was terminated,

17

the final *prima facie* element requires Plaintiff to show that Cambria treated similarly situated male employees more favorably.  [DSMF ¶ 42; Young Dec. ¶ 19].  Plaintiff is unable to make such a showing.

The Eleventh Circuit has emphasized that the proper comparison is to employees that are "similarly situated in all relevant respects."  <u>Jones</u>, 137 F.3d at 1311 (citing <u>Holifield</u>, 115 F.3d at 1562).  Specifically, the court wrote, "[i]n determining whether employees are similarly situated for purposes of establishing a *prima facie* case, it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways."  <u>Id.</u> (citing <u>Holifield</u>, 115 F.3d at 1562).  "It has been stated that similarly situated employees 'must have reported to the same supervisor as the plaintiff, must have been subject to the same standards governing performance evaluation and discipline, and must have engaged in conduct similar to the plaintiff's, without such differentiating conduct that would distinguish their conduct or the appropriate discipline for it.'"  <u>Gaston v. Home Depot USA, Inc.</u>, 129 F. Supp. 1355, 1368 (S.D. Fla. 2001) (quoting <u>Mazzella v. RCA Global Communications, Inc.</u>, 642 F. Supp. 1531, 1547 (S.D.N.Y. 1986)); <u>accord</u> <u>Sanguinetti v. United Parcel Serv., Inc.</u>, 114 F. Supp. 2d 1313, 1317 (S.D. Fla. 2000).  Thus, to establish this element of the *prima facie* case, Plaintiff must produce evidence that

18

would permit a jury to conclude that Defendant treated more favorably male employees who were responsible for a similar range of performance deficiencies. See Lathem, 172 F.3d at 793 (the relevant inquiry is whether the employer subjected similarly situated employees to different employment policies).

Defendant Cambria argues that Plaintiff Wohlhueter was terminated for being insubordinate and for repeatedly refusing to comply with a manager's instructions. [DSMF ¶¶ 34-40]. Plaintiff has not responded to Defendant's argument and has failed to identify any male employee who engaged in similar misconduct but was not terminated. Plaintiff, therefore, is unable to establish a *prima facie* case of sexually discriminatory termination, and the court **ORDERS** that Defendant's summary judgment motion [Doc. 49] be **GRANTED** on this claim.

As discussed *supra*, although Plaintiff Wohlhueter did not assert a retaliation claim in her complaint, she alleged retaliation in her EEOC charge, which was filed as an attachment to the complaint. [Doc. 2]. Plaintiff alleged in the charge that her termination was in retaliation for a prior complaint of discrimination. [Id.]. Defendant Cambria has addressed the retaliation issue in its summary judgment motion, and the undersigned will do the same. [Doc. 49].

19

Title VII acts to shield employees from retaliation for certain protected practices. Specifically, the statute provides, in pertinent part:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a). The <u>McDonnell Douglas</u> framework applies to retaliation cases. See <u>Holifield</u>, 115 F.3d at 1566; <u>Robinson v. AFA Service Corp.</u>, 870 F. Supp. 1077, 1083 (N.D. Ga. 1994). The burden of production is initially on the plaintiff, who must establish a *prima facie* case of retaliation by a preponderance of the evidence. To establish a *prima facie* case of retaliation, "a plaintiff must show that (1) she engaged in statutorily protected expression; (2) she suffered an adverse employment action; and (3) the adverse action was causally related to the protected expression." <u>Wideman v. Wal-Mart Stores, Inc.</u>, 141 F.3d 1453, 1454 (11th Cir. 1998). The plaintiff "'need not prove the underlying claim of discrimination which led to [her] protest,' however, the plaintiff must have had a reasonable good faith belief that the discrimination existed." <u>Holifield</u>, 115 F.3d at 1566 (citing <u>Tipton v. Canadian Imperial Bank of Commerce</u>, 872 F.2d 1491, 1494 (11th Cir. 1989)). Moreover, "[i]t is

important to note that this circuit interprets the causation requirement broadly:  'a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated.'"  Robinson, 870 F. Supp. at 1083 (citing EEOC v. Reichold Chems., Inc., 988 F.2d 1564, 1571 (11th Cir. 1993)); see also Olmsted v. Taco Bell Corp., 141 F.3d 1457, 1460 (11th Cir. 1998).

In order for a court to find that an employee's opposition to some employment action qualifies as protected speech, "the employee must, at the very least, communicate [her] belief that discrimination is occurring to the employer.  It is not enough for the employee merely to complain about a certain policy or certain behavior of coworkers and rely on the employer to infer that discrimination has occurred." Webb v. R & B Holding Company, Inc., 992 F. Supp. 1382, 1389 (S.D. Fla. 1998). The employee must show that she opposed the employment action or decision because it was discriminatory.  See Jurado v. Eleven-Fifty Corp., 813 F.2d 1406, 1411 (9th Cir. 1987) (finding expression not protected because plaintiff "has not shown that he ever opposed the format change as discriminatory before he was fired. He merely opposed the change for personal reasons. . . .").  The employee must put the employer "on notice that [she] was protesting an illegal employment practice."  EEOC v. Shoney's, Inc., 536 F. Supp. 875, 877 (D.C. Ala. 1982).

21

In the present case, Plaintiff testified that in late October of 2003, she asked Plant Manager Jim Young about his decision to select Ben Ready for the CNC position instead of her.  Plaintiff apparently believes that this action constitutes statutorily protected expression.  The problem for Plaintiff is that she did not complain about sex discrimination or any other form of discrimination when she questioned Young about his decision.  It is also clear that even Plaintiff did not believe that the decision to hire Ready was discriminatory.  She merely believed that it was unfair for the company to fill the position with an external candidate.   Plaintiff was asked and testified to the following:

> Q.    If that position had been given to someone else in the company with more company seniority than you, would you have had any problem?
>
> A.    No.
>
> Q.    It didn't matter who filled it?
>
> A.    No.
>
> Q.    If it [had] been [Dan] Childs or [Patrick] Walker or any of these people . . . that would have been perfectly fair and non-discriminatory and totally legitimate?
>
> A.    Right.  Yes.  Yes.  I feel, yes.
>
> Q.    So it was the fact that someone outside the company was selected, it was a problem?
>
> A.    Yes.
>
> Q.    And basically that was the nature of your complaint, that it was an external hire?
>
> A.    Yes. . . .
>
> Q.    And who did you make that complaint to?

A.    Jim Young. . . .

Q.    And what did you tell Mr. Young?

A.    I asked him why they hired – At the time I didn't know his name, so . . . I just said that guy on the CNC.

Q.    Is that exactly what you said, why'd you hire this guy?

A.    Yeah.  I said – 'Cause he approached me and he said, Marcia, he said I feel you might be a little upset and, you know, I just–I should have talked to you. . . .  I said why did you hire that guy, you know, at the CNC?  He said, well, we just decided to do something different.  I said that's it?  He said yeah.  He said I'm sorry, I probably should have talked to you about it but we're just doing something different. And I said fine.

Q.    That was the end of it?

A.    That was the end of it.  I did not say--

Q.    Complain to anybody else about it?

A.    No.

[Pla. Dep. at 170-72].

Plaintiff did not complain, and apparently did not even believe, that any form of unlawful discrimination had occurred when Young hired Ready to the CNC position in October of 2003.  See Galdieri-Ambrosini v. National Realty & Development Corp., 136 F.3d 276, 292 (2nd Cir. 1998) ("[Plaintiff's] complaints to Simon and Chiaro did not state that [she] viewed Simon's actions as based on her gender, and there was nothing in her protests that could reasonably have led National Realty to understand that that was the nature of her objections.").  Because no reasonable fact finder could conclude that Plaintiff engaged in statutorily protected expression, she is unable to

23

establish a *prima facie* case of retaliation.   It is, therefore, **ORDERED** that Defendant's summary judgment motion [Doc. 49] be **GRANTED** on Plaintiff's claim of retaliatory termination.

**IV.  Conclusion**

For all the foregoing reasons and cited authority, the undersigned **ORDERS** that Defendant Cambria's summary judgment motion [Doc. 49] be **GRANTED** on all of Plaintiff Wohlhueter's claims.

Judgment shall be entered in favor of Defendant.

**SO ORDERED** this 9th day of December, 2005.

JANET F. KING
UNITED STATES MAGISTRATE JUDGE

24